**NEAL–CRANE COMPANY, Appellant,**

v.

**TRIO CONSTRUCTION SERVICES, INC. et al., Appellees.**

[Cite as *Neal–Crane Co. v. Trio Constr. Serv., Inc.* (1989), 65 Ohio App.3d 234.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–363.

Decided Nov. 7, 1989.

*Hite & Heath, F. Richard Heath* and *Sara M. Grundish,* for appellant.

*Porter, Wright, Morris & Arthur, Denise Mirman* and *Lisa P. Leavitt,* for appellee Trio Construction Services, Inc.

*Michael Miller,* Prosecuting Attorney, *Harland H. Hale* and *Gene Wetherholt,* for appellee Upper Arlington Library.

---

JAMES A. BROGAN, Judge.

Plaintiff-appellant appeals from a summary judgment rendered by the common pleas court dismissing its complaint which alleged a breach of contract and sought to foreclose on a mechanic's lien. The trial court also denied plaintiff's Civ.R. 56 motion.

Defendant-appellee Upper Arlington Library ("Upper Arlington") entered into a construction contract in February 1986 with defendant-appellee, Trio Construction Services, Inc. ("Trio"), for the renovation of the Upper Arlington Public Library. Pursuant to the provisions of Upper Arlington City Code 138.11, Trio executed a bid guarantee and contract bond on February 4, 1986, which bond was underwritten by defendant-appellee Reliance Insurance Company ("Reliance").

On March 12, 1986, Trio let a written subcontract to plaintiff-appellant, Neal–Crane Company ("Neal–Crane") for the provision and installation of electrical equipment necessary for the renovation. This subcontract required Neal–Crane to pay its suppliers and employees for work performed on the renovation project. The contract also required Trio to make monthly progress payments to plaintiff. The original contract price of $222,450 was subject to a ten-percent retainage which was due and payable when Upper Arlington gave final approval for the project.

Neal–Crane filed a voluntary petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code on May 26, 1987. Apparently, plaintiff was denominated a debtor in possession. At the time it declared bankruptcy, Neal–Crane had not been paid in full by Trio for the work performed by Neal–Crane on the Upper Arlington Library project.

Defendants, Elgee Electric Company ("Elgee") and Loeb Electric Company ("Loeb"), provided electrical materials and supplies to Neal–Crane for completion of the renovation project pursuant to contracts with Neal–Crane. Because neither of these defendants was paid in full by Neal–Crane within four months of the date they last supplied the materials for the project, both Loeb and Elgee recorded mechanic's liens pursuant to R.C. 1311.26. Loeb recorded its lien for $5,112.88 on June 18, 1987, while Elgee recorded its lien for $58,834.03 on June 26, 1987. Subsequently, on June 16, 1987, pursuant to the provisions of R.C. 1311.21, Trio and Reliance posted a bond in the amount of $58,834.03 in favor of Elgee. Elgee commenced suit to foreclose on its lien on July 2, 1987.

Thereafter, on October 2, 1987, plaintiff recorded its lien for $39,917.83. When plaintiff received notice to commence suit pursuant to R.C. 1311.311, it filed the instant cause on November 3, 1987. The complaint set forth two claims for relief, the first for breach of contract against Trio and the second to foreclose on the lien recorded October 2, 1987. Trio answered and set forth its counterclaims against plaintiff on December 3, 1987.

In the interim, Trio had entered into settlement negotiations with both Loeb and Elgee regarding their lien claims, which claims were ultimately settled. An agreement was reached between Loeb and Trio in December 1987 by which Trio agreed to pay Loeb $3,500. Elgee settled its claim in May 1988 in exchange for payment by Trio of $47,500. The agreement provided that any and all claims, rights and interests held by Loeb and Elgee arising out of their respective performances for the library project were assigned to Trio in exchange for payments.

Trio and Upper Arlington then separately moved the trial court for summary judgments. Trio claimed that, by virtue of its settlements with Loeb and Elgee, it was entitled to set off these amounts against plaintiff's breach of contract claim. Since the $51,100 settlement exceeded plaintiff's claims against Trio, Trio maintained that it was entitled to judgment in its favor. Upper Arlington maintained that because it had complied with the provisions of R.C. 1311.311 in paying out to Trio all of the funds appropriated for the project, it was entitled to summary judgment on plaintiff's lien claim. In reply, plaintiff argued that Trio was barred by several provisions in the Bankruptcy Code from asserting its claims as a setoff against plaintiff's contract claim. With respect to the Civ.R. 56 motion by Upper Arlington, it was plaintiff's position that the library was still liable on the lien since it had improperly distributed the funds in contravention of R.C. 1311.311. Plaintiff also asserted, by separate motion, that it was entitled to summary judgment on both claims.

The trial court, by separate entries dated February 14 and March 17, 1989, granted the Civ.R. 56 motions of Upper Arlington and Trio, and denied plaintiff's motion for summary judgment. Plaintiff now appeals and sets forth the following assignments of error:

"1. The trial court erred in overruling Plaintiff's motion for summary judgment.

"2. The trial court erred in granting the motion for summary judgment of Defendant Trio Construction Services, Inc.

"3. The trial court erred in granting the motion for summary judgment of Defendant the Upper Arlington Public Library."

Plaintiff initially argues under its second assignment of error that the trial court erred in rendering summary judgment in favor of Trio. Specifically, plaintiff maintains that Section 362(a), Title 11, U.S.Code of the Bankruptcy Act operates to stay the assertion by Trio of any claim of setoff against any debt owed by Trio to plaintiff. Plaintiff contends that Sections 362(a)(5) and (7), Title 11, U.S.Code prohibited Trio from asserting the claims it acquired from Elgee and Loeb either as a setoff or as a lien claim paid pursuant to R.C. 1311.311.

Trio, in response to this argument, maintains that the automatic stay provisions of the Bankruptcy Code are inapplicable to this case. It is Trio's position that Section 362(a), Title 11, U.S.Code does not bar the assertion by a creditor of a counterclaim in a post-petition suit initiated by the debtor. As support for this position, Trio relies upon the decisions rendered in *In re Bell & Beckwith* (N.D.Ohio 1985), 50 B.R. 422, 429, and *In the Matter of Frenville Co., Inc.* (C.A.3, 1984), 744 F.2d 332, certiorari denied (1985), 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925.

The provisions of Section 362, Title 11, U.S.Code pertinent to this appeal provide:

"(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—

"(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

" * * *

"(5) any action to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

"(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

"(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

" * * *

"(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), does not operate as a stay—
"* * * *

"(3) under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period under section 547(e)(2)(A) of this title * * *."

Initially, it must be noted that plaintiff's claim against Trio is for breach of the contract between plaintiff and Trio. Specifically, plaintiff alleges that it is owed $39,917.82 under the contract for labor and material it performed and furnished for the library renovation. Trio, in asserting its payments to Loeb and Elgee as a defense to plaintiff's breach of contract action, stands in the shoes of Elgee and Loeb as the assignee of their claims. See, *e.g., Bullock v. Horn* (1886), 44 Ohio St. 420, 426–427, 7 N.E. 737. Accordingly, to the extent Trio is asserting any claim of either Elgee or Loeb as a defense to plaintiff's suit, those claims are premised upon the relationship of plaintiff with Elgee and Loeb, and independent of plaintiff's contract with Trio. Any lien claim held by Elgee or Loeb implicates only the fund held by Upper Arlington and cannot be asserted by Trio in defense of plaintiff's breach of contract action.

Based upon the foregoing, it is apparent that Section 362(a)(5), Title 11, U.S.Code does not stay the assertion by Trio of the payments to Elgee and Loeb as a defense to plaintiff's suit. That section stays only acts to create, perfect or enforce *liens against the debtor's property.* Because R.C. 1311.32 limits Trio's recovery by virtue of the lien claims assigned by Elgee and Loeb to actions *against the owner,* the stay provisions of Section 362(a)(5), Title 11, U.S.Code are inapplicable in the suit between plaintiff and Trio.

In a similar fashion, Section 362(a)(7) does not automatically stay the assertion by Trio of the payments to Loeb and Elgee as a setoff of plaintiff's claims. Section 362(a)(7) stays only the setoff of pre-petition debts owed to the debtor. A debt is defined as "liability on a claim." Section 101(11), Title 11, U.S.Code. Although plaintiff's claim against Trio arose pre-petition, Trio's liability on that claim became fixed subsequent to the filing of plaintiff's petition for bankruptcy. As such, the debt of Trio to plaintiff arose post-petition. Hence, Section 362(a)(7) has no application to the setoff asserted by Trio.

However, this court concludes that Trio's attempt to assert the assigned claims against plaintiff nevertheless violates the automatic stay provisions of Section 362. Specifically, Section 362(a)(6) prohibits "any act to

collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case." As we pointed out above, the claims against plaintiff assigned by Elgee and Loeb to Trio, which form the basis for Trio's setoff argument, are claims which arose prior to the commencement of plaintiff's Chapter 11 case. By its terms, Section 362(a)(6) stays the assertion of these claims. Cf. *In re Nelson* (Bankr.Kan.1980), 6 B.R. 248.

Trio's reliance upon *In re Bell & Beckwith, supra,* and *In re Frenville Co., Inc., supra,* as support for its argument that Section 362 does not stay counterclaims asserted against a debtor in post-petition suits brought by the debtor are misplaced for two reasons. First, unlike the facts of *In re Bell & Beckwith, supra,* Trio's claims are not contingent upon the assertion by plaintiff of its breach of contract claim. Regardless of plaintiff's decision to pursue its contract action against Trio, the claims of both Elgee and Loeb were viable prior to the filing of plaintiff's bankruptcy petition. Moreover, the reasoning employed by the Third Circuit in the *Frenville* decision, which reasoning the *Bell & Beckwith* court approved, has been questioned and criticized by courts which have had occasion to address the issue. See *Grady v. A.H. Robins Co., Inc.* (C.A.4, 1988), 839 F.2d 198, 200–201 (collecting cases), certiorari dismissed (1988), 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed.2d 972.

We likewise reject the reasoning employed in both *In re Frenville, supra,* and *In re Bell & Beckwith, supra.* Rather, the determination of whether Section 362(a)(6) operates to stay the assertion of a counterclaim by a party defending an action brought by the debtor turns upon an analysis of whether the counterclaim could have been asserted prior to the commencement of the debtor's bankruptcy proceeding.

Trio also asserts that, regardless of the applicability of Section 362, Title 11, U.S.Code, it is nevertheless entitled to set off against plaintiff's claims the assigned claims of Elgee and Loeb. The basis for this assertion is Section 553, Title 11, U.S.Code.

That section provides in part:

"(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case * * *."

It is readily apparent, however, that as a prerequisite to the assertion by Trio of a setoff under this section, it must first obtain from the bankruptcy court relief from the automatic stay provisions of Section 362, Title 11, U.S.Code. Section 553(a) specifies that the right of a creditor to set off a

mutual debt between the creditor and the debtor, although available, is subject to the provisions of Section 362. Cf. *In re Academy of Answering Services, Inc.* (N.D.Ohio 1988), 90 B.R. 294, 295–296 (citing cases), reversed on other grounds (N.D.Ohio 1989), 100 B.R. 327.

Based upon the foregoing, plaintiff's second assignment of error is sustained in part and overruled in part. Because the claims against plaintiff assigned by Elgee and Loeb to Trio are claims which arose prior to May 26, 1987, Trio must seek relief from the provision of 362(a)(6), Title 11, U.S.Code prior to asserting such claims as a setoff against plaintiff's breach of contract claim.

Plaintiff next maintains, under its third assignment of error, that the trial court erred in granting the Civ.R. 56 motion of Upper Arlington. It is plaintiff's position that Upper Arlington failed to establish that it properly complied with R.C. 1311.311 before releasing to Trio all of the remaining funds allocated for the renovation project. Plaintiff asserts that neither the performance bond put up by Trio in February 1986 nor the surety bond of June 1987 in favor of Elgee protected plaintiff's lien as required by R.C. 1311.311.

In response to this assignment of error, Upper Arlington contends that it fully complied with R.C. 1311.311. Specifically, Upper Arlington maintains that because R.C. 1311.311 authorizes a public authority to release funds due to the principal contractor once a sufficient bond is posted to protect the lien claimant's interests, this requirement was met in February 1986 when Trio posted its performance bond in favor of all materialmen and subcontractors. Since plaintiff did not record its R.C. 1311.26 lien until October 1987, it is Upper Arlington's position that it was under no obligation to retain any funds since the 1986 performance bond fully protected plaintiff's interest. For the reasons which follow, this court finds the position of Upper Arlington untenable and, therefore, reverses the summary judgment in its favor.

R.C. 1311.28 provides:

"Upon receiving the notice required by section 1311.26 of the Revised Code, such owner, board, officer, public authority, or authorized clerk, agent, or attorney thereof, shall detain from the principal contractor all subsequent payments as do not in the aggregate exceed such claim or claims."

R.C. 1311.311 provides in part:

"A lien is void and the funds upon which it is sought to be imposed wholly discharged therefrom if the principal contractor or any subcontractor or interested party acting in his name gives such notice to commence suit and files with the owner, board, officer, or clerk, agent, or attorney thereof, a

bond in double the amount of the claim upon which the lien is predicated, in favor of the lien claimant, executed by sufficient surety, approved in writing by the owner, board, officer, or clerk, agent, or attorney thereof, and conditioned upon the payment of any judgment upon such claim, plus costs."

The provisions of Upper Arlington City Code 138.11 regarding performance bonds to be posted with a bid for a contract with the city state:

"(A) Each person bidding for a contract with the City, for the construction, demolition, alteration, repair, or reconstruction of any public improvement is required to file with his bid a bid guaranty in the form of either:

"(1) A bond in accordance with Division (B) of this Section for the full amount of the bid;

" * * *

"(B) A bid guaranty filed pursuant to Division (A)(1) of this section shall be conditioned to:

" * * *

"(2) Indemnify the City against all damage suffered by failure to perform the contract according to its provisions and in accordance with the plans, details, specifications, and bills of material therefor and to pay all lawful claims of subcontractors, materialmen, and laborers for labor performed or material furnished in carrying forward, performing, or completing the contract; and agree and assent that this undertaking shall be for the benefit of any subcontractor, materialman, or laborer having a just claim, as well as for the City."

Once a lien is properly recorded under R.C. 1311.26 and notice is given to the owner, R.C. 1311.28 acts as a "stop payment" order to the owner. *Lee Turzillo Contracting Co. v. Cincinnati Metro. Hous. Auth.* (1967), 10 Ohio St.2d 5, 39 O.O.2d 3, 225 N.E.2d 255. The notice affects only payments to the principal contractor made subsequent to the notice served upon the owner pursuant to R.C. 1311.26. R.C. 1311.28. The recording of such notice gives to the lien holder a preference over other subcontractors and materialmen who have failed to record their liens as to payments subsequently due from the public authority. R.C. 1311.29. To the extent several subcontractors or materialmen record their notices prior to any payment subsequently due, such lien holders have no preference among themselves, but are entitled to share pro rata in any subsequent disbursement. R.C. 1311.29. However, even if a lien is properly recorded and the owner is notified in accordance with R.C. 1311.26 to 1311.31, the principal contractor may void the lien and, in effect, lift the "stop payment" order by posting a bond in favor of the lien claimant in twice the amount of the claim. R.C. 1311.311. The owner's failure to comply

with the provisions of R.C. 1311.26 to 1311.31 subjects the owner to liability. R.C. 1311.32.

Upon review of the above provisions contained in R.C. Chapter 1311, it is plain that Upper Arlington's reliance upon the performance bond posted by Trio in February 1986 is misplaced in this case. R.C. 1311.26 to 1311.311 provide a procedure by which an unpaid subcontractor, materialman, or laborer can perfect a lien upon funds for a public improvement. In the event a principal contractor does not dispute the correctness of the claim, the lien holder may direct payment of those funds to satisfy his claims without resorting to judicial process. R.C. 1311.31. The decision to dispute the validity of an R.C. 1311.26 lien rests with the principal contractor alone. Once the "stop payment" order of R.C. 1311.26 is invoked, a principal must affirmatively dispute the validity of the claim and post the requisite bond to dissolve the lien. Clearly, if the posting of the performance bond required by Upper Arlington City Code 138.11 also satisfied the requirements of R.C. 1311.311, an unpaid subcontractor, materialman or laborer would be required to commence suit in every instance. Such lien holders would never have the opportunity to avail themselves of the procedure provided by R.C. 1311.31. In short, Upper Arlington's position would effectively nullify the provisions of R.C. 1311.26 to 1311.32, since the only remedy available to a public works subcontractor, materialman or laborer would be a suit on the performance bond required by Upper Arlington City Code 138.11. Clearly, R.C. 1311.26 to 1311.32 does not supplant but, rather, supplements the remedies a lien claimant may have otherwise. R.C. 1311.311.

Moreover, the bond required by R.C. 1311.311 provides several protections to a lien claimant which are not provided by the posting of a performance bond under Upper Arlington City Code 138.11. R.C. 1311.311 specifies that the surety bond is to be in twice the amount of the lien holder's claim and that the bond is to be for the benefit of the lien claimant alone. The performance bond required by Upper Arlington City Code operates in favor of any subcontractor, materialman or laborer, and the owner, and is limited in amount to the full amount of the principal contractor's bid. Additionally, the bond posted by Trio under the Upper Arlington Code, which is modeled after R.C. 153.54, does not operate in favor of a subcontractor of a subcontractor. See, *e.g., J.T. Weybrecht's Sons Co. v. Hartford Accident & Indemn. Co.* (1954), 161 Ohio St. 436, 53 O.O. 345, 119 N.E.2d 836. The bond posted under R.C. 1311.311, however, is not so restricted. R.C. 1311.26. Finally, the posting by Trio of the performance bond in February 1986 was a condition precedent to acceptance by Upper Arlington of Trio's bid, whereas the claim of plaintiff could not arise under R.C. 1311.26 until subsequent to some performance by plaintiff. The third assignment of error is sustained.

■ Under its first assignment of error, plaintiff argues that it was entitled to summary judgment as to its claims for breach of contract and for foreclosure of its mechanic's lien. Plaintiff maintains that there is no dispute that Trio owed $39,917.82 under the contract and that Upper Arlington is liable on the mechanic's lien since it failed to comply with the provisions of R.C. 1311.311.

As to plaintiff's latter argument regarding the liability of Upper Arlington, construing the evidence most favorably to Upper Arlington, there remains a dispute as to several issues of fact. Despite our conclusion under the third assignment of error that the February 1986 performance bond posted by Trio did not satisfy the requirements of R.C. 1311.311, it is also apparent that a proper bond was posted by Trio in favor of Elgee and that Upper Arlington has paid Trio all of the funds appropriated for the project. The bond in favor of Elgee was posted June 16, 1987. Thus, if Upper Arlington complied with R.C. 1311.28 and retained only those subsequent payments due Trio after June 16, 1987 which did not exceed Elgee's claim, but otherwise paid Trio in full prior to October 2, 1987, plaintiff could not prevail on its lien claim. Cf. *L.E. Myers Co. v. Jordano Elec. Co.* (1988), 47 Ohio App.3d 132, 547 N.E.2d 1014. However, there is no evidence in the record which discloses either the amounts or dates, if any, of payments made by Upper Arlington to Trio subsequent to June 16, 1987. Absent this evidence, plaintiff has failed to establish that it is entitled to summary judgment on its claim to foreclose the October 1987 lien.

There also remain several issues of fact with respect to plaintiff's breach of contract claim. While there is evidence to support plaintiff's claim that $39,917.82 is due and owing from Trio, Article 11.2.6 of the contract between plaintiff and Trio indicates that plaintiff was contractually required to pay Elgee and Loeb for their labor and services from prior payments received from Trio. Trio's evidence indicates that plaintiff failed to fulfill this condition. Articles 5, 6 and 12.4 of the contract conditioned plaintiff's payment under the contract upon various factors, including payment by Upper Arlington to Trio. Since the Elgee and Loeb liens recorded in June 1987 operated as a "stop payment" order to Upper Arlington, plaintiff has failed to establish that it was entitled to payment from Trio subsequent to this date. As we noted above, there is no evidence regarding the amounts or dates of any payments made by Upper Arlington to Trio subsequent to the filing of the Loeb and Elgee liens. Absent such evidence, plaintiff's claim that it was entitled to payment in full under its contract with Trio has not been demonstrated. The first assignment of error is overruled.

Based on the foregoing, the judgment of the Franklin County Court of Common Pleas is reversed as to the summary judgment in favor of Trio and

Upper Arlington, but is affirmed with respect to the overruling of plaintiff's motion for summary judgment. This cause is remanded to that court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

McCORMAC, P.J., and WHITESIDE, J., concur.

JAMES A. BROGAN, J., of the Second Appellate District, sitting by assignment.