**In re Ralph C. BUNCH and Frankie V. Bunch, Debtors.**

**Ralph C. BUNCH and Frankie V. Bunch, Plaintiffs,**

v.

**NCNB SOUTH CAROLINA, Defendant.**

**Bankruptcy No. 89–01282.**
**Adv. No. 89–8108.**

United States Bankruptcy Court,
D. South Carolina.

Feb. 1, 1990.

---

78

George G. Reaves, Florence, S.C., for plaintiffs.

Donald E. Rothwell, Columbia, S.C., for defendant.

## ORDER

WILLIAM THURMOND BISHOP, Bankruptcy Judge.

Before the court is the adversary complaint of the debtors seeking damages for violation of the automatic stay pursuant to 11 U.S.C. § 362(h).[1]

### FACTS

The debtors filed for relief under Chapter 13 of the Bankruptcy Code on April 7, 1989 and R. Geoffrey Levy was appointed Trustee. NCNB South Carolina was listed as a secured creditor on Schedule A–2 of the debtors' schedules.

An order for the § 341 meeting of creditors was mailed along with the notice on April 11, 1989, by the office of the Chapter 13 Trustee to all listed creditors. Although there is no proof that the defendant received this, there is evidence that the notice was not returned to the court, to the Chapter 13 office, or to the debtors' attorney.

On April 20, 1989, Dale Moore, an employee of the defendant, prepared an offset whereby the debtors' bank account no.

1. Further references to the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) shall be by section number only.

746111907 was debited for a delinquent installment payment in the amount of $314.13. This offset was not actually accomplished until April 24, 1989. The automatic stay of 11 U.S.C. § 362 was in effect at the time of the offset and the defendant neither sought nor had been granted any modification of the automatic stay.

The money which was taken by the defendant from the debtors' bank account has never been returned to them.

The plaintiff, Ralph C. Bunch, called Dale Moore on April 25, 1989, and advised him of the bankruptcy status of both debtor parties. Thereafter, George Reaves, attorney for the debtors, called Mr. Moore and confirmed the bankruptcy filing of the debtors.

Dale Moore acknowledged that he knew of the filing in April of 1989 but defended his failure to return the money because of what he described as a threat by plaintiffs' attorney to file suit against the defendant, in which event the Court would hear testimony concerning the entire transaction.

While it is disputed that the defendant had actual knowledge of the pending bankruptcy on the date that the offset took place, it is undisputed that the defendant knew of the filing no later than July 28, 1989, at which point Joel A. Smith, III, President of the defendant, personally acknowledged service of the Summons and Complaint.

## ISSUE

Did defendant's actions regarding this offset transaction violate § 362(h) of the Code, entitling plaintiffs the relief afforded by this section? Specifically, were these actions willful?

## CONCLUSIONS OF LAW

In *Inslaw, Inc. v. U.S. of America and U.S. Department of Justice,* 76 B.R. 224 (Bankr.D.Dist.Col.1987), Judge Bason stated that "... violation of the automatic stay strikes at the heart of the Bankruptcy Code's mechanisms for debtor rehabilitation and for equity among creditors,...." He further states, "The automatic stay is one of the most fundamental protections afforded to a bankruptcy entity. The legislative history emphasizes this point." (*Inslaw, supra,* at 226) Judge Bason then recites from S.Rep. No. 95–989 (1978) U.S. Code Cong. & Admin.News 1978 pp. 5787, 5835–5841 pp. 49, 50–55, by which Congress sets forth its intent regarding Section 362:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy. (S.Report No. 95–989 pp. 54–55)

In addition:

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pressure their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtors assets prevents that. (S.Report No. 95–989 p. 49)

In *In re Newman,* 53 B.R. 7 (Bankr.M.D. Tenn.1985), a creditor seeking to repossess an automobile from the debtor was informed by the debtor that he had filed a bankruptcy petition. The creditor's agent requested proof and the debtor displayed a receipt from his attorney. The court held that such notice, although minimal, constituted adequate notice of filing so that subsequent repossession was held to be willful in violating the automatic stay.

Most courts appear to accept the premise that once a creditor has been notified of the bankruptcy filing, the creditor has a duty to restore the status quo; that is the creditor should undo its post-petition collection activities without the debtor having to seek affirmative relief from the bankruptcy

court. *In re Robinson*, Case No. 89–00897, C–89–8102 (Bankr.D.S.C. 1–2–90), *In re Stephen W. Grosse, P.C.*, 68 B.R. 847 (Bankr.E.D.Pa.1987) accord, e.g., *In re Miller*, 22 B.R. 479 (D.C.Md.1982).

■ An incident which may not be willful at its inception becomes willful if the offending creditor fails to take steps to rectify the situation in a timely manner. *In re Ketelsen*, 78 B.R. 573 (Bankr.D.S.D. 1987).

■ From the testimony and exhibits, in conjunction with the above cases, this court finds and concludes that the automatic stay was violated as a result of the defendant's post-petition offset of the plaintiffs' account. Although it may be questionable whether the defendant had actual knowledge of the debtors' filing on the date of the offset, the defendant thereafter acquired actual knowledge of the debtors' bankruptcy and failed to take steps to undo and correct the offset result. This constitutes a willful act by the defendant. Further, it is no defense to the defendant that it may have received notice of the debtors' filing simultaneous with notice or assertions that the plaintiffs intended to file this adversary action.

Section 362(h) provides that an individual injured by a willful violation of the stay shall recover actual damages including costs and attorney's fees and in appropriate circumstances, punitive damages.

■ The debtors in this case have incurred actual damages in the amount of $314.13 representing the illegal offset and the debtor, Ralph C. Bunch, lost two additional days from work. From the testimony presented, his salary is $227.16 per day for a total of $768.45 (including the offset amount) in actual damages. In addition, they have incurred attorney's fees and costs which amounts should be determined and awarded at a subsequent hearing.

■ While the Code allows punitive damages in appropriate circumstances, this court is of the belief that such are not warranted in this case. It appears that the post petition action on the part of the defendant is isolated and the defendant does not have a history of stay violations. Also, while doing nothing to rectify a mistake because of the threat of legal action (the rationale being that the Court would then decide the whole matter) is no defense to willfulness as set forth above, this is a mitigating and extenuating circumstance and should be considered by this Court on the issue of punitive damages. This Court further concludes that an award of punitive damages is not necessary to "teach the defendant a lesson" so as to prevent this conduct from happening again.

Now therefore, it is,

ORDERED, ADJUDGED, AND DECREED,

*First:* the defendant's actions constitute a willful violation of the automatic stay under § 362(h).

*Second:* plaintiffs are awarded $768.45 in actual damages.

*Third:* plaintiffs' attorney is entitled to attorney's fees and costs, to be determined and awarded at a hearing set on February 12, 1990 at 10 o'clock A.M., at the Federal Building, 1100 Laurel Street, Columbia, South Carolina.

*Fourth:* Punitive damages against the defendant are disallowed.